may proceed. Good morning, your honors. May it please the court? You may want to raise the lectern a little bit. It helps us record the arguments and helps us hear it a little bit better. Thank you. Thank you, your honor. My name is Roshna Balakene and I represent the appellant Michael Holmes. Michael Holmes seeks a certificate of innocence pursuant to 28 U.S.C. section 2513 because he is innocent of the crime that he was wrongfully convicted of. In section 2513, Congress created a statutory scheme that provides a certificate of innocence to individuals who are convicted of crimes that they did not commit. In order to obtain a certificate of innocence, Mr. Holmes was required to prove by a preponderance of the evidence several things, only one of which remains in dispute in this appeal. And that is that he, quote, did not commit any of the acts charged, end quote. And that's in section 2513 subsection A. To meet his burden of proof, Mr. Holmes presented significant amount of evidence demonstrating his innocence. In response, the government relied on a single affidavit, which was prepared by a police officer, Alan Ray, eight years after the incident. The affidavit was not subject to cross-examination. At the time, Alan Ray had never testified live. And the affidavit, excuse me, it's a declaration, was severely impeached by photographic and testimonial evidence that the district court ignored. In its opinion, somewhat related to the appeal we just heard, but even more dramatically so in this, I think, five-page opinion, no facts were found. No factual findings were made. No credibility determinations were resolved. No reasoning was given. So it's difficult for this court to even identify how the district court was able to credit this sole three-page declaration to the exclusion of all the evidence that Mr. Holmes submitted. Of course, the law requires here, as with any factual dispute, that the district court was required to weigh the evidence of innocence against any competing evidence of guilt offered by the government and determine if Mr. Holmes met the preponderance standard. Which, of course, is the lowest standard of proof and is satisfied if the scale tips even slightly in the move-on's favor. But the district court did not do that. Instead, it ignored and it incorrectly believed that the mere presence of a declaration from a police officer was fatal to Mr. Holmes' motion. And in so doing, it effectively applied a much higher burden of proof than is, in fact, the applicable burden, which is preponderance. It applied something more akin to clear and convincing evidence or even a reasonable doubt standard, where the mere existence of a contrary statement of inculpatory evidence would be fatal to the motion. Well, couldn't the district court, or wasn't the district court, free to believe and disbelieve as it saw as appropriate? Yes, Your Honor. Had the district court weighed it into the record, it certainly was entitled to make credibility determinations. But it did not do that. And to turn to the first order, because there were two attempts by Mr. Holmes to get a certificate of innocence, in the first order, the district court clearly did not make credibility determinations. Had it done so, it would have had to contend with the fact that the only live witness who the district court had heard from by that point, relevant to the certificate of innocence, was Mr. Holmes himself, who testified at his criminal trial. And this is what the district court had previously said in vacating Mr. Holmes' conviction. Holmes, quote, did not give conflicting or inconsistent testimony at trial. And there was no evidence that he had made false statements to the police or in any court proceeding. Furthermore, Holmes had consistently maintained that he is innocent and that Sharp and Garrett lied in their testimony. And when the district court, Judge Jackson... But the problem is that Officer Ray did not testify at the trial, as I understand it, because he was away on military service. That's right. When his statement of events is added to the mix as part of this proceeding, doesn't that change things up quite a bit and allow the court to make this credibility determination? And in the order, on this order that we're talking about, the court makes the statement that Officer Ray was a witness with firsthand knowledge of the events and his credibility has not been impugned. So... It doesn't tell us the court made a credibility determination. The credibility determination the court would have had to make, had it actually made a credibility determination, is Ray versus Holmes. Ray submitted a three-page paper declaration. She was aware of that declaration when she vacated Mr. Holmes' conviction. And when she vacated Mr. Holmes' conviction, she expressly made a finding that Mr. Holmes was a credible witness who had given credible and consistent testimony and had never been found to make false statements. If the district court is credited with making a credibility determination at all, which, Your Honor, I submit it did not do, it would have been saying a three-page declaration from a police officer is more credible to me than the live testimony of Mr. Holmes that I previously said, while aware of Ray being out there and having seen the declaration, that Mr. Holmes' testimony I previously found was credible, consistent, and unimpeached, is somehow discredited. But the district court doesn't say that it did that. It's as if the district court simply said, I'm not going to look at Mr. Holmes' evidence because I have this declaration from Mr. Ray. And I think there's no better evidence that it didn't actually consider Mr. Holmes' evidence than the fact that it ignored the photographs. The photographs are a real problem here. And I think this alone requires correction by the appellate court and warrants reversal because Mr. Holmes submitted photographs. And it's a little entangled in the briefs to sort of explain what the significance of the photographs is. But I think they're so relevant that I'd like to take a moment to explain. When you walk into the house, there's two, and it's sort of a large rooming house, I guess you'd call it, lots of rooms. And different people were renting different rooms at the time. Mr. Holmes did not live there, but he used to. There's two staircases. There's a front staircase and there's a rear staircase. There was a lot of dispute over where the police officers claimed to have seen Mr. Holmes. And the significance of that is Shell Sharp, who has been thoroughly discredited at this point, wrote in his police report that he saw Mr. Holmes on a staircase holding a bag of drugs. And that when he saw Mr. Holmes and Mr. Holmes saw him, Mr. Holmes dropped the bag and ran. There's only one staircase that leads to the third floor, and that's the rear staircase. The problem is you cannot see the rear staircase, and you don't even know it's there when you enter the home. You have to walk all the way through the house to the back of the house, and then you see there's a staircase. And it's a narrow switchback staircase with a high banister. So as you're walking up the staircase, you don't even know if there's someone coming down on the flight above you. That's the viewpoint. Mr. Holmes submitted some photographs, which to this day have never been challenged as not fairly and accurately depicting the staircase. And his characterization of the staircase is undisputed and unrebutted. Mr. Holmes submitted photographs of the staircase, which render Alan Ray's declaration incredible and a physical impossibility. The district court apparently missed the photographs, didn't look at them. I was just going to ask, what did the district court do? All we know is what the judge said in her opinion, I guess. So the first opinion says nothing about the photographs, and the second opinion explains why. Because in the second opinion, it says, we're not going to consider photographs as newly discovered evidence, because you could have submitted these photographs the first time around, but you failed to do so. That factual finding by the district court that Mr. Holmes failed to submit the photographs is wrong. It's clearly erroneous, and it requires reversal. Because Mr. Holmes had submitted the photographs. He submitted them as an attachment to a supplemental reply, which he sought leave to file, and that leave was granted. And I don't know why, but the district court apparently overlooked the photographs. The photographs are material evidence, because they directly impeach Alan Ray's declaration. And there's no better evidence of materiality than the fact that in a civil trial, where Mr. Holmes was actually given a hearing, and of course, in the Certificate of Innocence, Judge Jackson did not give Mr. Holmes a hearing, and offered him no opportunity to present argument or even question Alan Ray. But in the civil trial, Mr. Holmes did present photographic evidence, and those photographs were a big part of the civil trial. And in the civil trial, the jury heard from Alan Ray, it heard from Shell Sharp, it heard from Bobby Garrett, it heard from other police officers, and in a resoundingly quick verdict, where it considered a week's worth of evidence, it had no trouble the federal jury concluding that Alan Ray was lying, because Alan Ray claims to see Mr. Holmes committing a crime. And notwithstanding Alan Ray's testimony, the jury chose to believe the photographs, it chose to believe Mr. Holmes' consistent testimony of innocence and his explanation of what he was doing that day, and it said there was no probable cause to arrest Mr. Holmes, the police had fabricated the evidence of his guilt, and that he was an innocent man deserving compensation for his time spent in prison. So the photographs are material evidence, and the district court failed to consider them. There is no mention of the photographs in the original order, and it has to be corrected on that basis. Mr. Holmes at least deserves the opportunity to question Alan Ray, and to provide the court with evidence on an argument on the photographs, and on his innocence. So at a minimum, this court has to remand for an evidentiary hearing, where the court is directed to consider all of the evidence that was submitted. We would submit, turning to, and by the way, in the original district court opinion, Mr. Holmes submitted more than just the photographs. He referenced his testimony from, or excuse me, you know, the district court sat, was the criminal trial judge, and that is by design, because the court deciding the certificate of innocence needs to be familiar with the criminal record. And the district court heard testimony from Mr. Holmes. He submitted a consistent declaration of innocence. There was no physical inculpatory evidence whatsoever, no fingerprints, nothing linking him to the drug or firearm evidence, and there were documents showing that he lived in Ferguson at the time that this occurred. Turning to the Rule 60 motion, oh my goodness, I have to quickly proceed because I'm eating into my rebuttal time. Alan Ray gave testimony in the civil trial, which is newly discovered, and it's required that justice be done in this case to correct an erroneous judgment by the district court. Alan Ray's declaration says it's based on personal knowledge. He doesn't, it's based on personal knowledge, and he saw Mr. Holmes on the staircase committing a crime. At his civil trial, he revealed he had no independent recollection of the events, and that before his declaration, he reviewed Shell Sharp's police report. That's a new revelation that was not in his declaration. In fact, something exactly the opposite was in his declaration, which is that he's basing his declaration on personal knowledge, and what actually happened was he doesn't remember this. He's a police officer of 12 years at this point, I believe, and he's done many, many stops. He doesn't remember what happened with Mr. Holmes. Eight years later, the government tapped him on the shoulder and asked him to provide a declaration, and in so doing, they provided him with the police report of the incident. That police report, the jury found, was fabricated. It was written by Shell Sharp, who has been thoroughly discredited, and Alan Ray reviewed that police report and then wrote a declaration, which is a mirror image of the police report. And so now that we know Alan Ray didn't have an independent recollection but reviewed the police report, that is newly discovered evidence. We also rely on our briefs, and I'm going to, unless there are any further questions, just reserve whatever is left of my time for rebuttal. Thank you. Very well. Judge Wollman, Judge Shepard, Judge Erickson, good morning, and may it please the court. You may proceed, counsel. Thank you. My name is Gil Cisan, and I represent the appellee of the United States of America. Today we ask that the district court's decision denying the appellant's certificate of innocence and the appellant's subsequent Rule 60 motion regarding newly discovered evidence be affirmed as neither decision amended to an abuse of the trial court's discretion. Now, if this court were to actually order what the appellant wants in this case, it would actually go where no other appellate court has gone before, save for one, and that is in the almost 80 years of this statute's existence, and that is overturning a district court's denial of a certificate of innocence. And there's good reasons for doing that. The appellant just laid out some of the historical factors in the legislative history regarding the statute, but I think a couple of key factors this court should note. First of all, this is a waiver of sovereign immunity statute, hence it is strictly construed, and the statute confers strictly and directly on the trial judge that heard the case the ability to determine whether or not a certificate of innocence should be granted. In this case, what Congress essentially wanted was this, an opinion from the district court judge that this person seeking this certificate is in fact innocent, meaning that the applicant bears that burden, not the government. And therefore, when you look at this case in its total, the two big questions that are presented before this court is, did the district court abuse its discretion in denying the certificate of innocence, and did the district court abuse its discretion in denying the Rule 60 motion? And when we look at this abuse of discretion, I think it's careful to note what this court noted in the Racing Services case regarding its own application of this statute. And it quoted specifically and approvingly from the Rigsby decision, which said only if this decision, even if we were to disagree with the district court's decision, only if it's arbitrary and capricious and no rational basis will we overturn a district court's decision for a denial of a certificate of innocence. So now let's turn to the actual factors and to the actual facts of this case specifically brought out by the applicant. The applicant noted that the district court made no factual findings. The applicant noted that she made no, I think, no credibility determinations were made. Yet that's not true. Essentially, what the argument that the applicant just brought forth in the last 10 or 12 minutes was that they disagreed with the district court's decision. What the applicant fails to comprehend is that the district court, in determining the certificate of innocence, is the trier of fact. It has the ability to determine, as any trier of fact, to determine and accept all of a person's testimony, none of a person's testimony, or some of a person's testimony. In this case, the applicant noted that no factual findings were made, no credibility determinations were made. Yet the district court's decision on the certificate of innocence belies that. For example, she notes, for example, that not only does she quote raise declarations saying that this is a first-hand person with knowledge of the events, she also notes right after that several other factors that go into determining why she denied the certificate of innocence. She focused on his presence at the house, 5894 Cades. She focused on the fact that he was present in the room where they found the drugs, the heroin, the $4,000. She focused on all that, and she also focused on the fact that Holmes apparently made a statement to police which Ray corroborated. So she did make a credibility determination. She was choosing to believe certain aspects of Holmes' testimony and not choosing to believe certain aspects of his other testimony regarding, for example, his innocence. For example, Holmes, in his trial testimony, never said that he made a statement to police. For example, Holmes never stated that he owned any of these things, but the district court decided I'm going to credit Ray's declaration and I'm going to credit some of Holmes' testimony because they corroborate, meaning his presence at the house and the findings of contraband in a place where he admitted he was there. So did Judge Jackson overlook the photograph? She did not, and let me point you to that. I'm glad you asked that question. The section of the photographs that the applicant points to is from her Rule 60 motion. The Rule 60 motion is a determination of whether or not there is newly discovered evidence, and the newly discovered evidence that the applicant relied on in the Rule 60 motion were threefold, the civil jury verdict, the pictures, and Ray's testimony, apparently the inconsistent testimony of Ray, which we don't believe it was. So when you look at the district court order, she does say that Ray's testimony, like they had an opportunity to rebut Ray's declaration, but she's talking about Ray's trial testimony because his trial testimony was based solely on the declaration. If you look at the trial testimony in the civil case, those pictures were not brought up. They did not effectively rebut him. They did not impeach him, and that was the whole point of her tenor in talking about the pictures. I don't believe the district court ignored the pictures. As a matter of fact, as the applicant pointed out, those pictures were submitted in a surreply to the motion for certificate of innocence, and the applicant had to seek leave to actually get those in, and she granted that in the certificate of innocence. She granted the motion for leave to file the surreply was granted. So I don't think from this record we can assume that she ignored the photos, and even if she did, she is within her means to credit that testimony, Ray's testimony, over that. The point is, and let me turn now to the Rule 60 motion, the reason the Rule 60, the only basis for granting the Rule 60 motion, and Judge Jackson pointed it out, was whether or not there was anything in the civil trial that would have contradicted his declaration, because if there was and it's a significant contradiction of his declaration, then it would be newly discovered evidence, and therefore it could be considered under Rule 60. But if you look at the Rule 60 motion, she carefully goes out. She says, while his testimony is not a moment of clarity, he does not contradict himself. He maintains the story, that he maintains the situation that he stated in his declaration, and he further points out that the trial counsel had the ability to bring up the fact that he had his declaration, but they never showed it to him. They had the ability to bring these photographs, but they never did. That was what Judge Jackson was talking about in her Rule 60 motion. Well, when you look at the photographs, are they fatally inconsistent with Ray's statement, or maybe stated differently, are they fatally inconsistent with the finding of culpability? No, Your Honor. Because of the fact that the photograph shows a stairway that doesn't go to the third floor. So the statement that's made by Ray is that he was on the second flight of stairs when he sees Holmes coming down from the third flight of stairs. And then he sees the bag drop, then he comes back and runs after him. Holmes runs, and Ray runs back after him. So I don't think it does. And the matter of the fact is that even Holmes testifies that anyone that's coming down that staircase, you would hear that from anywhere throughout the house. So whether or not he actually had seen him or not, I don't think is the point. Clearly, there's only one person on that staircase. You hear someone come down, and you hear them run up, and there's no one else there, you can readily conclude that that was the only person that was up and running up and down the staircase. So I think that's sort of an irrelevant point to make. But what we do note, Judge, and I think the fleeing here is an important thing to note, and I want to stress this to the Court, that this Court can affirm on any basis in the record, even though it wasn't argued by the parties. Now, in this case, the only issue that the parties have argued is whether or not he'd committed the acts charged, the second prong of 2513. But it should note that in both the Rule 60 and in the Certificate of Innocence, Judge Jackson noted that Ray indicated and stated that he saw Holmes run after he dropped the bag. And I think that's an important point, and here's why. Because the applicant bears the burden of showing that not only did he not commit any offense, but not only any offense against the United States, but of any offense, including any state or local offense. The fleeing in and of itself is indicative of his lack of innocence. And you have to remember the third prong, which is that he can't have brought about this by any misconduct or negligence. In this case, the running does not only factor in on the innocence, but it also factors in on that third prong, too. Because he runs, you know, of course the police are going to think that you're guilty or that you're not innocent in this case. And moreover, the fleeing in and of itself is a crime, even though it wasn't charged. It's a violation of Revised Missouri Statute 575.1501, which says that fleeing from a police officer attempting to make an arrest or stop is, in fact, a Class A misdemeanor. So clearly, clearly, clearly Judge Jackson had a basis. She referenced it twice in the Certificate of Innocence that he had fled. It is a basis to conclude that, in fact, he wasn't innocent, along with the other facts that the judge found. There's a couple of things going on here, and I'd just like you to address them. The first is that Mr. Holmes asserts that because Ray never actually testified, that somehow you can't make a credibility determination comparing an affidavit to a real live witness. And I guess as a trial judge, I'm curious about that. But would you address that issue first? Yes, Your Honor. I think there are a couple of answers to that. Number one, that would require, I guess implicitly they're requiring that an evidentiary hearing is required. And that's clearly not the case. So let's first start with the legal aspects of it. First, is an evidentiary hearing required? The statute is silent on that point. And the Keegan case from the Southern District of New York, which is the seminal case regarding this examination of the history, indicated that typically the evidence would be presented by affidavit, and it would rarely be done by testimony. Now, in this case, does Judge Jackson have the ability to measure the credibility based on the affidavit and the testimony? And she does. And here's why. Because Holmes did testify in his criminal trial. She has that already as a basis. And now she has Ray. And here's the thing, Your Honor. So she has the two competing versions. She chose to credit some of Ray's and parts of Holmes' testimony, but not all of it. She's entitled to do that as the trial court judge in this case. And moreover, Your Honors, how does someone prove their innocence? Maybe a question that goes through your head is how would they prove their innocence in a case like this? Well, every defense attorney knows how to do that. They can get affidavits. They can get declarations. Holmes himself testified that Duane Holinshed was the owner of this bedroom, and Duane Holinshed was a family member. And let's look. And while in their briefs they indicate it would be unreasonable for Humph to get an affidavit from Holinshed saying that the drugs and the guns were his, I would say I would beg to differ. As a matter of fact, this incident occurred in 2003. This whole proceeding took place in 2015. The statute of limitations had already run. It would have been a small matter to find Duane Holinshed and say, hey, these are my drugs. These are my guns. I was living here. You know, Mr. Holmes had nothing to do with it. But they didn't submit that. They did not submit that. They had the ability to do it and didn't do it. And I also want to point out the importance of the fact-finding here. And I want to focus you on the Grubbs case from the Sixth Circuit. It's very similar to this case because it talks about a person who was convicted of felon possession. The conviction was overturned. And then, therefore, he sought a certificate of innocence. In the Grubbs case, there was actually testimony that the gun that the defendant was claimed to have possessed was actually owned by his brother. You know, but then there was also competing testimony that, you know, maybe perhaps the gun, the defendant did possess the gun when he flourished it at another individual, even though that person who claimed that the defendant flourished it could not identify the specific gun or could not even identify, well, this is the exact gun that it was. And the Sixth Circuit concluded on this record, we have to rely on the fact-finder here. We can't conclude from this record that the district court abuses discretion. One other thing that I thought, the argument that was made stressed the fact that when the court set aside the original conviction that it credited Holmes' testimony. And it strikes me that when one is confronted with the openly corrupt evidence of two government witnesses, it might be a different standard that you're applying when you say that there's a reasonable probability that one might find a reasonable doubt as opposed to, I have found a greater weight to the evidence, the factual innocence. Well, I'm glad you brought that up because, you know, I was looking at that, too. It's careful to see where she made that statement. She made that statement about Mr. Holmes' factual statements in the 2255. She has to make that determination because once you strip away Sharpe's testimony, she has to determine whether or not the jury verdict can stand on its own. And she has to also determine whether or not one of the standards is whether or not the result would change. Yeah, there's a prejudice problem. That's right. And most importantly, she talks about the Thompson case right before it, where she's basically saying in the Thompson case, the Thompson case basically denied the 2255 even under similar circumstances, but because the defendant made inconsistent statements and lied to the police. That's why she's saying that in the next paragraph. She's saying this is not like Thompson. He didn't lie. At least we have no evidence that he did. And he wasn't inconsistent. And therefore, the jury verdict can stand. It's a completely different thing. She's not making a credibility determination that he's truthful for all the proceedings. She made that separate conclusion later on. I see that my time has elapsed, Your Honor. I would ask that, find that clearly the district court did not abuse its discretion. She was well within her rights to make these determinations, and therefore, the district court should be affirmed in both respects regarding the Rule 60 and the certificate of innocence. Thank you, Your Honor. Very well. Very briefly, Your Honors. The June 2017 district court order clearly states that Mr. Holmes failed to submit photographs with his original certificate of innocence. That's factually incorrect. So I would ask the court, Your Honors, to review that order again. With respect to Ray's declaration, all of the, quote, facts that the district court relied on, she's citing to Ray's declaration. Ray's declaration was proven false not only by the photographs but by the newly discovered testimony from his civil trial, wherein he admits that he didn't actually have any independent recollection of the incident and that he was relying solely on Shell Sharp's police report. Your Honors, Congress created a statute for a reason. When someone is wrongfully convicted of a crime that they did not commit, they should be allowed to present evidence and to meet their burden of proof and receive a certificate of innocence. It's a congressional right that's embodied in this subsection 2513, and we respectfully ask this court to reverse, at least for an evidentiary hearing for Michael Holmes. Thank you very much. Thank you for your argument. The case is now submitted. We will take it under consideration. Thank you.